## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

MARCUS WELLS,

        Plaintiff,

                                Case No.: 21-cv-11265
vs.                                Honorable:
                                Magistrate Judge:

FARMINGTON PUBLIC SCHOOLS;
and ELLEN ELY, in her individual and
official capacity;

        Defendants.
_____/

Mungo & Mungo at Law, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste 250
Bingham Farms, MI 48025
(248)792-7557 (phone)
(248)792-7303 (fax)
Caseaction@Mungoatlaw.com
_____/

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff MARCUS WELLS by and through his attorneys,

Mungo & Mungo at Law, PLLC., and for his Complaint against the above-named

Defendants, states as follows:

## PRELIMINARY STATEMENT

1.     This is a Civil Rights action in which Plaintiff, MARCUS WELLS

(M.W.), seeks relief from Defendants for violation, under color of state law, of his rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the Constitution and laws of the State of Michigan, all resulting in injury to Plaintiff.

2.     On or about November 4, 2019, Plaintiff, then a 17-year-old 11th grader at Defendant Farmington Public Schools' Central High School, was called "NIGGER" by Defendant teacher, ELLEN ELY, out loud and in front of her entire class. In 2019, FARMINGTON PUBLIC SCHOOLS suspended/expelled Plaintiff from school on the basis of his race.

3.     There has been no dispute as to whether or not Defendant Ely called Plaintiff "Nigger" because multiple witnesses have confirmed that she did through written and verbal statements to agents, servants, and/or employees of Defendant FARMINGTON PUBLIC SCHOOLS.

4.     The public humiliation, and ridicule of M.W. was undertaken pursuant to the intentional and deliberate actions of ELEN ELY and the deliberate and indifferent supervision, discipline and or enforcement of school rules and regulations pertaining to the school staff, including Defendant ELY and pursuant to the racially discriminatory customs, practices, and policies of Defendant FARMINGTON PUBLIC SCHOOLS.

2

## JURISDICTION

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of Plaintiffs' Constitutional and Civil Rights and this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

6.      Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2), because this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

7.      Plaintiffs demand a trial by jury in this action on each and every one of his claims.

## PARTIES

8.      Plaintiff MARCUS WELLS is a citizen of the United States and at all times material to this action was a resident of Detroit, MI, within the Eastern District of Michigan.

9.      Plaintiff Marcus Wells is African-American.

10.     Defendant FARMINGTON PUBLIC SCHOOLS (hereinafter "FPS")

3

is a public school district, so authorized under the laws of the State of Michigan, that operates Farmington Central High School, as a part of its responsibilities and services. At all relevant times herein, Defendant FPS acted under color of regulation, usage, custom, and law, and pursuant to its policies and practices.

11.   Defendant ELLEN ELY (hereinafter "ELY") was, at all times material to this action, an administrator and/or teacher employed by FPS. Defendant ELY is sued in both her individual and official capacities. At all relevant times herein, Defendant ELY acted deliberately and intentionally to violate MW's Constitutional, Federal and State Statutorily protected rights to be free from race discrimination. Same was done under color of regulation, usage, custom, and law, and pursuant to the policies and practices of Defendant FPS.

12.   Defendant Farmington Public Schools participated and/or acquiesced in the following constitutional violations including, but not limited to, these forms of participation:

> a.  Authorization and/or ratification to violate Plaintiff's constitutional rights;
>
> b.  *Ex post facto* ratification thereof;
>
> c.  As the supervisory authority over Farmington Central High School, created, promulgated and maintained customs, policies and practices that were likely to lead to and/or were a moving force in the punishment and humiliation of Plaintiff; and
>
> d.  Failure to train, supervise and discipline the FPS employees and refusal to enforce the laws prohibiting discrimination against African

4

Americans.

## FACTS

13. On or about November 4, 2019, Plaintiff was attending Farmington Central High School (FCHS) as an 11th grader.

14. Defendant ELY was teaching Math class which Plaintiff was attending.

15. At some point during the class session, Plaintiff was threatened by another student.

16. After threatening Plaintiff, the other student began to approach Plaintiff. As Plaintiff stood up to defend himself from the actions of the other student, Defendant ELY physically approached plaintiff, coming within arm's length of plaintiff, reached out her hand as to physically grab plaintiff and in the process called plaintiff out loud and within earshot of plaintiff's classmates a "NIGGER" !

17. By the foregoing acts, Defendants discriminated against Plaintiff on the basis of his race, to wit, African American.

18. By the foregoing acts, Defendants created a hostile educational environment for Plaintiff and other African American students on the basis of race.

19. These acts of Defendant ELY were facilitated by the policies, practices and/or customs, as well as the subsequent and on-going participation and ratification of Defendant FPS.

20.    Among other policies, practices, and/or customs, Defendant FPS:

a. Failed to train, supervise, and/or discipline administrators, teachers and other employees and agents of Defendant FPS, with regard to racial discrimination and racial harassment;

b. Failed to train, supervise, and/or discipline administrators, teachers and other employees and agents of Defendant FPS, as to the impropriety of using their authority and power to racially discriminate against students;

c. Failed to train, supervise, and/or discipline administrators, teachers, and other employees and agents of Defendant FPS, that they may not assault students; and

d. Maintained a policy, practice, and/or custom of differential treatment and discipline of African-American students as compared to White students, to wit, expelling/suspending African American students on the basis of race.

21.    During the 2018 and 2019 school year, Plaintiff was suspended from

school on three separate occasions.

22.    The reasons given by FPS for the said suspensions were a pretext for

FPS's real reason, i.e. Plaintiff was an African American.

23.    Plaintiff's similarly situated white classmates and other white FPS

students were not suspended for the same or similar conduct and or based on their

race.

24.    Defendant FPS acting under the color of regulation, usage, custom and

law and pursuant to its policies and practices suspended and or expelled African

American students, including plaintiff at a disproportionate rate compared to FPS'

white students. (See example of suspensions data and expert's opinion attached

hereto).

25.     Defendant FPS's established policies, practices, customs, and usages were a moving force behind the constitutional violations, suffered by Plaintiff herein.

26.     Plaintiff's injuries were caused by the intentional acts of Defendants and were reasonably foreseeable.

27.     Plaintiff suffered damage to his education and educational future, and further suffered humiliation, embarrassment, degradation, emotional and psychological injury, past, present and future, all proximately caused by the public ridicule, and public humiliation and violations of his constitutional and statutory rights caused by Defendants herein, inflicted under color of law and pursuant to the unlawful customs, policies, and practices of Defendant FPS.

## CLAIMS

### *FIRST CLAIM FOR RELIEF*

**42 U.S.C. § 1983**
**Fourteenth Amendment Equal Protection**
**Against All Defendants**

28.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

29.     At all times alleged herein, Defendant ELY was a person acting under the color of law.

30.    The Equal Protection clause of the Fourteenth Amendment to the United States Constitution requires that when a state establishes a public school system (as in Michigan), no child living in that state may be denied equal access to schooling on the basis of their race nor discriminated against in any way based on race.

31.    Defendant ELY and FPS intentionally deprived Plaintiff of equal access to education and otherwise discriminated against Plaintiff based upon his race, by creating a racially hostile educational environment, because of Plaintiff's race, to wit, African-American.

32.    Plaintiff's constitutional rights were clearly established at the time of the misconduct because a reasonable official and or teacher would understand that such acts would cause a deprivation of MW's right.

33.    At all times herein, the individually named and identified Defendants intentionally discriminated against Plaintiff based on his race in all manner of ways as set forth herein all in violation of 42 U.S.C. §1983.

34.    Defendant FPS intentionally discriminated against Plaintiff by suspending plaintiff from FPS because of Plaintiff's race.

35.    Defendant's deliberate conduct was the moving force behind Plaintiff's deprivation of his constitutional right to the quality of education that Caucasian students are provided.

36.     As a direct and proximate result of Defendant's actions, Plaintiff

sustained, *inter alia*, the following injuries which were a foreseeable consequence

of Defendant's actions:

- a. Conscious psychological and emotional pain, suffering, anguish,
  distress, and fear, past and future;

- b. Plaintiff's constant and on-going sense of uncertainty and insecurity
  with regard school and schooling; and

- c. Disruption of Plaintiff's education, including the loss of friends,
  teachers, and counselors.

## *SECOND CLAIM FOR RELIEF*

### Violation of 42 U.S.C. § 1983
### Fourteenth Amendment SUBSTANTIVE DUE PROCESS
### As to all Defendants

37.     Plaintiff incorporates by reference the allegations set forth in the

foregoing paragraphs, as if fully set forth herein.

38.     At all times herein Defendants owed to Plaintiff a duty to protect

Plaintiff from and provide an educational environment free of racial discrimination

and/or harassment.

39.     In their actions, set forth above, Defendants FPS and ELLEN ELY

knowingly and/or with deliberate indifference violated the Plaintiff's clearly

established fundamental right to be free from racial discrimination and harassment,

unreasonable punishment, public humiliation, degradation and embarrassment based

on his race and for no valid or reasonable educational purpose whatsoever, as

secured by the Fourteenth Amendment to the United States Constitution.

40.   Furthermore, the above referenced punishment, humiliation, degradation and embarrassment invaded and violated Plaintiff's sense of conscience and ethics, as secured by the Fourteenth Amendment to the United States Constitution.

41.   Defendant's conduct was so egregious and so outrageous that it shocks the contemporary conscience, and it constituted an arbitrary exercise of governmental power, unjustified by any legitimate educational or governmental interest.

42.   Defendants caused these violations in part through the following conduct:

a.   They affirmatively undertook deliberate actions that resulted in M.W. being assaulted against his will by ELEN ELY, for no valid educational purpose whatsoever; and

b.   Their actions were clearly unreasonable, excessive and abusive.

c.   Suspending the Plaintiff because of his race to wit, African American.

43.   As a direct and proximate result of the aforementioned actions taken by Defendants FPS and ELLEN ELY, Plaintiff sustained the following injuries and damages:

a.   Conscious psychological and emotional pain, suffering, anguish, distress, and fear, past and future.

    b.   A constant and on-going sense of uncertainty and insecurity with regard school and schooling; and

    c.   Disruption of his school situation, including the loss of friends, teachers, and counselors.

### *THIRD CLAIM FOR RELIEF*

**42 U.S.C. § 1983**
***MONELL* CLAIM**
**Against Defendant FARMINGTON PUBLIC SCHOOLS**

44.    Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

45.    Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulations, custom, or usage, of any State … subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured". 42 U.S.C. § 1983.

46.    The Equal Protection clause of the Fourteenth Amendment to the United States Constitution requires that when a state establishes a public school system (as in Michigan), no child living in that state may be denied equal access to schooling on the basis of their race and or discriminated against because of their race i.e., African American.

47.    Defendant FPS, through its final decision-making authority,

11

established, promulgated, and implemented the following customs, usages, practices, and/or policies:

a. Failing to train, supervise, and/or discipline administrators, teachers and other employees and agents of Defendant FPS, with regard to racial discrimination and racial harassment against African American students and teachers;

b. Failing to train, supervise, and/or discipline administrators, teachers and other employees and agents of Defendant FPS, as to the impropriety of using their authority and power to racially discriminate against students;

c. Failing to train, supervise, and/or discipline administrators, teachers, and other employees and agents of Defendant FPS, that they may not assault students based on race, to wit, African Americans;

d. Specifically ratifying—and therefore adopting as policy – the actions of Defendant ELY, whereby Plaintiff was assaulted, humiliated, and ridiculed because of his race, African Americans; and

e. Maintaining a policy of differential treatment and discipline of African American students, including but not limited to suspensions and expulsions.

48.     Each of these aforementioned policies, customs, practices, and usages set forth above were known by Defendant FPS to be highly likely and probable to cause violations of the constitutional rights of African American students, in particular Plaintiff herein.

49.     Defendants' deliberate conduct was the moving force behind Plaintiff's deprivation of his constitutional right to the quality of education that Caucasian students are provided.

50.     As a direct and proximate result of these FPS customs, policies and

practices, Plaintiffs sustained, *inter alia*, the following injuries which were a foreseeable consequence of Defendants' actions:

> d. Conscious psychological and emotional pain, suffering, anguish, distress, and fear, past and future;
>
> e. Plaintiff's constant and on-going sense of uncertainty and insecurity with regard school and schooling; and
>
> f. Disruption of Plaintiff's education, including the loss of friends, teachers, and counselors.

### *FOURTH CLAIM FOR RELIEF*

### VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT FPS AND DEFENDANT ELY IN HER OFFICIAL CAPACITY

51.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

52.     Title VI of the Civil Rights act prohibits intentional discrimination on the basis of "race, color, or national origin" by any federally assisted program or activity. 42 U.S.C. § 2000d.

53.     Defendant FPS is subject to this mandate because it is a public education entity which received federal financial assistance at all material times.

54.     A "program or activity" under Title VI includes "a local educational agency…system of vocational education, or other school system."  42 U.S.C. § 2000d-4a(2)(B).

55.     Defendant FPS is a "program or activity" under Title VI.

56.     Defendant ELY was, at all relevant times, an employee and agent of Defendant FPS responsible for, *inter alia*, teaching Math to students of FPS and maintaining a safe and discrimination-free educational environment.

57.     Defendant ELY discriminated against Plaintiff by intentionally calling him a racial slur, to wit, "NIGGER" and assaulting Plaintiff based on his race, while conducting her Math class. At all times, Defendant ELY was acting within the scope of her official duties as a teacher for Defendant FPS.

58.     Defendant ELY's discrimination was so severe and objectively offensive that it effectively deprived Plaintiff of the same educational resources and activities as those enjoyed by White students.

59.     Defendant FPS had actual and/or constructive notice of Defendant ELY's racial discrimination against African Americans and in particular, Plaintiff, and her creation of an objectively hostile educational environment on the basis of race.

60.     Defendant FPS failed to take appropriate responsive action against Defendant ELY's intentional racial discrimination and creation of a hostile educational environment on the basis of race.

61.     Defendant FPS deliberately practices intentional and unlawful discrimination against African Americans by intentionally suspending and expelling African Americans based on their race at a disproportionate rate as compared to its

White student population.

62.     As a direct and proximate cause of Defendants' deliberate indifference and intentional discrimination, Plaintiff suffered, *inter alia*, the following injuries which were a foreseeable consequences of Defendants' actions:

> a. Conscious psychological and emotional pain, suffering, anguish, distress, and fear, past and future;
>
> b. Constant and on-going sense of uncertainty and insecurity with regard school and schooling; and
>
> c. Disruption of Plaintiff's education, including the loss of friends, teachers, and counselors.

## *FIFTH CLAIM FOR RELIEF*

### VIOLATIONS OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT AGAINST ALL DEFENDANTS

63.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

64.     Pursuant to the Michigan Elliott Larsen Civil Rights Act ("ELCRA"), an educational institution may not "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origins, or sex." M.C.L. § 37.2402(a).

65.     In addition, under the ELCRA, a person may not "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." M.C.L. § 37.2302(a).

66.     Defendant ELY violated the foregoing provisions of the ELCRA by assaulting, harassing and discriminating against Plaintiff because of his race and creating a racially hostile environment for Plaintiff and other African American students.

67.     Defendant FPS is vicariously liable for the racially hostile and discriminatory acts of Defendant ELY.

68.     Further, Defendant FPS failed to adequately respond to complaints of Defendant ELY's racial harassment and discrimination.

69.     Defendant FPS discriminated against Plaintiff by including but not limited to Defendant, FPS' unlawful suspension of Plaintiff based on Plaintiff's race, Defendants denied Plaintiff full utilization and/or benefit of an educational institution and a public service because of his race.

70.     As a direct and proximate cause of Defendants' violation of the ELCRA, Plaintiff suffered, *inter alia,* the following injuries which were a foreseeable consequences of Defendants' actions:

> d. Conscious psychological and emotional pain, suffering, anguish, distress, and fear, past and future;
>
> e. Constant and on-going sense of uncertainty and insecurity with regard

school and schooling; and

    f.  Disruption of Plaintiff's education, including the loss of friends, teachers, and counselors.

### SIXTH CLAIM FOR RELIEF

### ASSAULT AGAINST DEFENDANT ELY

71.    Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

72.    On or about November 4, 2019, Defendant ELY intentionally and physically approached Plaintiff and came within arm's length of Plaintiff, reached out her hand as to physically grab plaintiff and in the process called plaintiff, out loud within earshot of Plaintiff's classmates, a "NIGGER" !

73.    The foregoing actions by Defendant ELY were an intentional, unlawful threat or offer to do bodily injury to Plaintiff by force and/or unauthorized or offensive touching to Plaintiff's person.

74.    Defendant ELY, under the circumstances created well-founded fear of imminent peril in Plaintiff.

75.    Defendant ELY had the apparent ability to carry out the act of bodily injury and/or unauthorized or offensive touching of Plaintiff if not prevented.

76.    Plaintiff was lawfully on the premises as he was a student to Defendant ELY's class.

77.    Defendant ELY's actions were an assault upon Plaintiff in violation of Michigan common law.

78.    As a direct and proximate cause of Defendant ELY's violation of Michigan common law, Plaintiff suffered, *inter alia*, the following injuries which were a foreseeable consequences of Defendant's actions Conscious psychological and emotional pain, suffering, anguish, distress, and fear, past and future.

## *SEVENTH CLAIM FOR RELIEF*

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT ELY

79.    Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

80.    On or about November 4, 2019, Defendant ELY intentionally and physically approached Plaintiff and came within arm's length of Plaintiff, reached out her hand as to physically grab plaintiff and in the process called plaintiff, out loud within earshot of Plaintiff's classmates, a "NIGGER" !

81.    Defendant ELY's actions against Plaintiff MW are extreme and outrageous and is the type of conduct that falls outside all bounds of human decency, thus shocking the human conscious.

82.     Defendant ELY acted with the intent to cause Plaintiff MW emotional distress or with a reckless disregard as to whether her actions would lead to said emotional distress.

83.     Defendant ELY's conduct as outlined above was for an ulterior motive or purpose.

84.     Defendant ELY's actions are a direct and proximate cause of Plaintiff MW's emotional distress.

85.     Plaintiff MW suffered severe emotional distress as a result of Defendant ELY's conduct in violation of Michigan's common law.

WHEREFORE, Plaintiff demands the following relief against all Defendants, jointly and severally, for the violation of his rights as set forth herein:

a.  A declaration that Defendants violated the Constitutional rights of Plaintiff;

b.  A declaration that Defendant FPS maintains unlawful customs, policies, and practice of disproportionate suspensions and/or expulsions of African Americans based on race including plaintiff herein;

c.  Defendant FPS be ordered to immediately cease and desist from its disparately suspending/expelling African American students and to provide reports every six months for a five-year period detailing its expulsion and suspension of its African American students compared to that of its White students.

d. Non-economic damages including but not limited to embarrassment, humiliation, emotional distress, mortification and frustration, experienced by Plaintiff and caused by Defendants' unlawful, unconstitutional, and unjustified conduct, in an amount determined by a jury to be fair, just, and reasonable and in conformity with the evidence at trial;

e. Attorneys' fees and costs, as allowed, pursuant to 42 U.S.C § 1988 and or allowed under the law; and

f. Such other and further legal and/or equitable relief as appears just and proper to the Court or the jury in its discretion.

g. Punitive damages against Defendants in the amount of $5,000,000.00.

h. Exemplary damages against the Defendants to the extent allowable by law.

May 27, 2021                     Respectfully submitted,

                                **MUNGO & MUNGO AT LAW, PLLC**

                                By: */s/Leonard Mungo*
                                Mungo & Mungo at Law, PLLC
                                Attorneys for Plaintiff
                                31700 Telegraph Rd., Ste 250
                                Bingham Farms, MI 48025
                                (248)792-7557 (phone)
                                (248)792-7303 (fax)
                                Caseaction@Mungoatlaw.com

## 2018-2019 Suspension Data

|  | African American | | Caucasian | |
|---|---|---|---|---|
|  | # | % | # | % |
| Suspended | 139 | 5.8% | 141 | 2.8% |
| Not Suspended | 2265 | 94.2% | 4849 | 97.2% |
| Total Census | 2404 |  | 4990 |  |

Census Data



Racial Census Report by School Districts
2018 - 2019

| District Code | District Name | American Indian | | Asian / Pacific | | African American | | Hispanic | | White | | Multiracial | | Enrollment | % Minority |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 63190 | Clarkston Community School District | 11 | 0.15% | 146 | 1.99% | 182 | 2.48% | 491 | 6.70% | 6266 | 85.71% | 218 | 2.97% | 7334 | 11.32% |
| 63200 | Farmington Public School District | 14 | 0.15% | 1390 | 14.57% | 2404 | 25.20% | 345 | 3.62% | 4990 | 52.31% | 396 | 4.15% | 9539 | 43.54% |
| 63210 | Holly Area School District | 12 | 0.36% | 26 | 0.79% | 52 | 1.57% | 207 | 6.26% | 2862 | 86.54% | 148 | 4.48% | 3307 | 8.98% |
| 63220 | Huron Valley Schools | 34 | 0.36% | 132 | 1.47% | 116 | 1.29% | 401 | 4.46% | 8080 | 89.91% | 224 | 2.49% | 8987 | 7.60% |
| 63230 | Lake Orion Community Schools | 18 | 0.25% | 248 | 3.37% | 207 | 2.81% | 633 | 8.60% | 5809 | 78.96% | 442 | 6.01% | 7357 | 15.03% |
| 63240 | South Lyon Community Schools | 2 | 0.02% | 448 | 5.15% | 237 | 2.73% | 424 | 4.88% | 7300 | 83.94% | 286 | 3.29% | 8697 | 12.78% |
| 63250 | Oak Park, School District of the City of | 2 | 0.05% | 7 | 0.16% | 4190 | 96.11% | 17 | 0.39% | 126 | 2.89% | 18 | 0.41% | 4358 | 96.70% |
| 63260 | Rochester Community School District | 31 | 0.20% | 2180 | 14.11% | 547 | 3.54% | 977 | 6.32% | 11194 | 72.45% | 522 | 3.38% | 15451 | 24.17% |
| 63270 | Clawson Public Schools | 3 | 0.19% | 17 | 1.09% | 198 | 12.73% | 110 | 7.07% | 1132 | 72.75% | 96 | 6.17% | 1556 | 21.08% |
| 63280 | Lamphere Public Schools | 12 | 0.48% | 143 | 5.76% | 222 | 6.94% | 101 | 4.07% | 1862 | 75.77% | 124 | 4.99% | 2484 | 19.24% |
| 63290 | Walled Lake Consolidated Schools | 28 | 0.21% | 902 | 6.61% | 1246 | 9.13% | 773 | 5.67% | 10264 | 75.24% | 429 | 3.15% | 13642 | 21.62% |
| 53300 | Waterford School District | 45 | 0.53% | 208 | 2.44% | 902 | 10.56% | 1328 | 15.55% | 5689 | 66.60% | 370 | 4.33% | 8542 | 29.07% |
| 33900 | Sarah J. Webber Media Arts Academy | 0 | 0.00% | 0 | 0.00% | 150 | 68.49% | 35 | 15.98% | 15 | 6.85% | 19 | 8.68% | 219 | 84.48% |
| 3901 | AGBU Alex-Manie Manoogian School | 0 | 0.00% | 0 | 0.00% | 7 | 1.75% | 1 | 0.25% | 391 | 98.00% | 0 | 0.00% | 399 | 2.01% |
| 3906 | Pontiac Academy for Excellence | 4 | 0.52% | 7 | 0.90% | 455 | 58.79% | 243 | 31.40% | 41 | 5.30% | 24 | 3.10% | 774 | 91.60% |
| 3907 | Great Lakes Academy | 0 | 0.00% | 1 | 0.66% | 127 | 84.11% | 17 | 11.26% | 6 | 3.97% | 0 | 0.00% | 151 | 96.03% |
| 3909 | Oakside Scholars Charter Academy | 3 | 0.41% | 5 | 0.68% | 333 | 45.06% | 269 | 36.40% | 71 | 9.61% | 58 | 7.86% | 739 | 82.54% |

2013-2019 Data: Comparing Suspension Percentages to Census Percentages



### 2013-2019 Suspension Data

|  | Estimated Total Suspensions | # Suspended | % of Total Suspensions | % of Total Population (2018-2019 Census Data) |  |
|---|---|---|---|---|---|
| *Group* | N | X |  | p | *Binomial p* |
| African American | 2102 | 1110 | 52.8% | 25.20% | 0.00 |
| Caucasian | 2102 | 885 | 42.1% | 52.31% | 0.00 |

Is the percentage of African Americans who are suspended (52.8%) greater than the percentage of African Americans in the Farmington School District population (25.20%)?

• Yes, the difference is statistically significant.

Is the percentage of Caucasians who are suspended (42.1%) less than the percentage of Caucasians in the Farmington School District population (52.31%)?

• Yes, the difference is statistically significant.

2018-2019 Data: Comparing African American Suspension Percentages to Caucasian Suspension Percentages



**Recent Trend (Sept 2018 to Nov 2019):**

- From Sept 2013 through July 2018 within Farmington, 55% of all suspensions were African American students.

- From Sept 2018 through Nov 2019 within Farmington, 47% of all suspensions were African American students.

**General Education Suspensions by Ethnicity (9/18-11/19)**

Asian American 5.7%
Hispanic or Latino 2.3%
African American 47.0% — 139 (47.0%)
Caucasian 47.0% — 141 (47.0%)

**2018-2019 Suspension Data**

|  | African American | | Caucasian | |
|---|---|---|---|---|
|  | # | % | # | % |
| Suspended | 139 | 5.78% | 141 | 2.83% |
| Not Suspended | 2265 | 94.22% | 4849 | 97.17% |
| Total Census | 2404 | | 4990 | |

Is the percentage of African Americans who are suspended (5.78%) <u>greater</u> than the percentage of Caucasians who are suspended (2.83%)?

- Yes, the difference is statistically significant.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARCUS WELLS,
                    Plaintiff,

vs.

FARMINGTON PUBLIC SCHOOLS;
and ELLEN ELY, in her individual and
official capacities;
                    Defendants.

Case No.: 21-cv-11265
Honorable:
Magistrate Judge:

                                                                        /

Mungo & Mungo at Law, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste 250
Bingham Farms, MI 48025
(248)792-7557 (phone)
(248)792-7303 (fax)
Caseaction@Mungoatlaw.com

                                                                        /

## **JURY DEMAND**

NOW COMES Plaintiff, Marcus Wells, by and through his attorneys, and hereby demands

a trial by jury of the issues in the above-captioned cause of action.

                    Respectfully submitted,

                    MUNGO & MUNGO AT LAW, PLLC

Dated: May 27, 2021

                    */s/ Leonard Mungo*
                    Attorney for Plaintiff
                    Leonard Mungo (P43562)
                    31700 Telegraph Rd., Suite 250
                    Bingham Farms, MI 48025
                    (248) 792-7557 Office Phone
                    (248) 792-7303 Fax
                    caseaction@mungoatlaw.com

1